UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO,<br><br>                    Petitioner,<br><br>v.<br><br>DANIEL PARAMO, Warden,<br><br>                    Respondent. | Case No.: 16-cv-02337-WQH-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

## I.    <u>INTRODUCTION</u>

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Raul Arellano ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, seeks federal habeas relief. (ECF Nos. 1, 6). After reviewing the Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1), Respondent's Answer and Memorandum of Points and Authorities in support thereof ("Answer") (ECF No. 9), Petitioner's Traverse (ECF No. 11), supporting

documents and pertinent state court Lodgments, the Court **RECOMMENDS** the Petition be **DENIED** for the reasons stated below.

## II.     FACTUAL BACKGROUND

**A. State Proceedings**

"[A] determination of factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The following facts, taken from the California Court of Appeal's January 14, 2013, decision on direct review have not been rebutted with clear and convincing evidence and must be presumed correct. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

> In 2006, the then 12-year-old victim lived with Arellano and his wife, Maria, for a couple of months.  Arellano, who was 27 or 28, would pick the victim up from school and they would be home when Maria returned from work.  On one occasion, Maria arrived home and her bedroom door was locked.  After five or ten minutes, the door was unlocked.  Maria found Arellano and the victim inside.  The victim said she was sleeping.  Arellano said he was in the shower and did not hear Maria knock on the bedroom door.  On another occasion, Maria went into the kitchen and saw Arellano and the victim with their pants down having sex.  Maria did not mention either incident when she testified at Arellano's preliminary hearing because she was scared her failure to report the incident would cause her to lose custody of her children.

> Some time after these incidents, Arellano apologized to Maria.  He told her he tried, but could not stop having sex with the victim.  Maria subsequently left Arellano.

> In April 2008 Maria and the victim were living with the victim's mother in San Diego.  One day, when Maria was on her way home and about two or three miles away, she saw Arellano drive by in his van. He pulled over and she asked him why he was at her house or where he was coming from.  She could not recall his response, but when Maria arrived home, the victim was not there and the victim's mother did not know her whereabouts.  When the victim came home a few minutes

Case No.:  16-cv-02337-WQH-MDD

later, Maria asked her if she had been with Arellano.  The victim became upset and said, "Yes."

The victim's mother struck the victim.  When the victim raised her arm and attempted to strike her mother back, Maria called the police.  The victim then locked herself in the bathroom and said she was not going to speak to anybody.

Two San Diego police officers responded to Maria's call.  The victim came out of the bathroom and talked with them.  She initially denied ever having sexual contact with Arellano, but then told them she had had sex with Arellano at his home in El Cajon at about 4:00 p.m. that day.  She said it was not the first time.  The first time was in the bedroom of Maria and Arellano's apartment, where Maria almost caught them.  About a month later, in January 2007, the day before her 13th birthday, she and Arellano had sex again.  She told one of the officers that, from then on, they had sex once a month until about February 2008 and about once a week after that.  She told the other officer that, until a couple weeks earlier, they had been having sex twice a month.  The sex occurred at Arellano's home in El Cajon.  The victim told the officers she was in love with Arellano.  She was calm and did not cry when she discussed their sexual relationship.

An El Cajon police officer was called to the victim's home.  The victim told the officer Arellano was Maria's estranged husband.  The victim also told the officer she had been having an ongoing sexual relationship with Arellano and, during that period, they engaged in consensual vaginal sex once a week at his home in El Cajon.

Early the following morning, Maria and the victim's mother took the victim to a hospital where a child abuse pediatrician examined her vaginal and anal areas and took swabs from her labia, vagina, and cervix.  Arellano was a contributor to DNA in sperm found on the labia swabs.  The victim told the doctor the last time she engaged in sexual activity was around 4:30 p.m. the prior day.

Approximately a week later, the victim ran away from home.  Maria sent Arellano a text message stating she knew the victim was with him, the police were looking for the victim, and Arellano should bring her back home.  A week and a half later, Arellano contacted Maria

3

and asked her to run away with him because he would be imprisoned for six years for his conduct with the victim, but Maria refused.

The victim returned home about five and a half months later, after police officers arrested Arellano. The victim was with Arellano when the officers arrested him and had been with him for much of the time she was away from home. During her time with him, when she was still 14 years old, they had sex many times. She continued to have a sexual relationship with him when she turned 15.

She remained at home for about six months and ran away again after being subpoenaed and ordered to appear in court to testify at Arellano's first trial. [Footnote: Because of her disappearance, the trial court declared a mistrial.] She returned home some months later, but then ran away once more a couple of weeks afterwards.

When she returned home again, she was noticeably pregnant. She gave birth to her child in November 2010. The day before Arellano's second trial, she ran away with the child, who was then two months old.

Because it appeared the victim was unavailable to testify, her preliminary hearing testimony was read to the jury. At the preliminary hearing, the victim, then 14 years old, testified she had known Arellano for a year and he was married to Maria. The victim denied having sexual relations with Arellano. She only told the police officers she had sex with Arellano because the police officers pressured her to talk to them and she did not think she was going to get Arellano in big trouble. She denied telling the officers she thought she was in love with Arellano.

Just before the People planned to rest their case, the victim appeared at trial. At that time she was 17 years old and she testified Arellano was the father of her child. The child was conceived in Mexico, where the victim had stayed with Arellano for six to eight months. She initially testified she first had sex with Arellano in January 2008, a week before she turned 14. She then quickly changed her testimony and said she was already 14 when she first had sex with him. She had sex with him once on the day the police officers came to her home and once, for the first time, the week prior. Both times were at his mother's home in Tijuana, Mexico. She said on the day Maria called the police to

their home, she had ditched school, taken the bus and trolley to Tijuana, had sex with Arellano at his mother's house there, then returned to San Diego by trolley and bus around 4:00 p.m. or 5:00 p.m.

The victim admitted she told one of the San Diego police officers the first time she had sex with Arellano was at Maria and Arellano's apartment and the next time was the day before her 13th birthday. In addition, she admitted she told one of the police officers she had been having sex with Arellano twice a month until a few weeks before Maria summoned the officers to their home. She also admitting [sic] telling the officers that Arellano would pick her up after school and also on Saturdays, he did not use a condom, he ejaculated on the bed or paper, and she thought she was in love with him. She said she lied about having sex with Arellano before she turned 14 because Maria was "messing with" her boyfriend and she wanted Maria to think she was "messing around" with Arellano. She further testified she was in foster care on her 13th birthday and was not allowed to go anywhere other than school.

The victim similarly admitted she told an El Cajon police officer that she had been having an ongoing, consensual sexual relationship with Arellano for about one year, she and Arellano had been meeting once a week at Arellano's apartment in El Cajon to have sex, and they had been having sex twice a month until a couple of weeks before April 2008. The victim further admitted lying at the preliminary hearing. She said she did so because she did not want to get herself in trouble for having sex with him.

Although the victim lived with her mother and Maria for a couple months before Arellano's second trial, she became upset with Maria because Maria had been writing letters to Arellano. The victim testified she loved Arellano, felt Arellano now belonged to her, and she did not want to get him in trouble.

(ECF No. 10-10 at 2-7).

On February 10, 2011, a San Diego Superior Court jury convicted Petitioner of seven counts of committing a lewd act on a child under 14 years old involving substantial sexual conduct (California Penal Code, §§ 288(s), 1203.066(a)(8); counts 3-9) and one count of unlawful sexual intercourse with

a minor more than three years younger than him (Cal. Pen. Code § 261.5(c); count 10). (ECF No. 10-3 at 116-120). On April 21, 2011, the Superior Court sentenced Petitioner to 18 years and 8 months in prison and, in addition to other fines and fees, imposed a $10,000 restitution fine pursuant to Cal. Pen. Code § 1202.4(b). (*Id.* at 137).

On May 11, 2011, Petitioner filed a notice of appeal and raised the following grounds on appeal: (1) insufficient evidence for counts 3 through 9; (2) violation of right to unanimous jury for counts 3 through 9; (3) ineffective assistance of counsel; and (4) the trial court erred in denying his *Marsden*[1] motion. (ECF No. 10-10 at 2). On January 14, 2013, the California Court of Appeal (Fourth District, Division One) affirmed the judgment. (ECF No. 10-10). Petitioner filed a Petition for Review with the California Supreme Court, which denied review on April 17, 2013. (ECF Nos. 10-11, 10-12).

On April 22, 2014, Petitioner filed a Petition for Writ of Habeas Corpus with the San Diego Superior Court. (ECF Nos. 10-13, 10-14, 10-15, 10-16, 10-17, 10-18; Case No.: EHC 976). The habeas petition was approximately 1000 pages long and listed ninety-eight grounds for relief. (*Id.*). Of these, fifty-four grounds were claims of ineffective assistance of counsel ("IAC"), which were denied for failure to submit full or partial transcripts of the preliminary hearing and trial proceedings, (ECF No. 10-19 at 3); sixteen grounds were also IAC claims but denied because they were raised and rejected on appeal, (*Id.* at 4); three grounds were found to be unintelligible, (*Id.* at 15); and the remaining grounds were denied on the merits. (ECF No. 10-19).

On October 24, 2014, Petitioner filed a Petition for Writ of Habeas

---

[1] *People v. Marsden*, 2 Cal. 3d 118 (1970).

Corpus with the San Diego Superior Court claiming he was denied due process at a hearing for violating prison rules. (ECF Nos. 10-20, 10-21; Case No.: HSC 11460). The superior court denied habeas relief on November 11, 2014. (ECF No. 10-22).

On June 12, 2015, Petitioner filed another Petition for Writ of Habeas Corpus, under the same court number, with the San Diego Superior Court claiming he was denied access to all of his legal materials. (ECF No. 10-23; Case No.: HSC 11460). Petitioner also requested that the court appoint an attorney and investigator. (*Id.*). On June 17, 2015, the superior court denied habeas relief as well as the request for a court appointed attorney and investigator. (ECF No. 10-24).

The San Diego Superior Court received correspondence from Petitioner dated July 13, 2015, requesting specific reporter's transcripts in order to prosecute a habeas petition. (ECF No. 1 at 76*)*. On July 15, 2015, Petitioner filed undated correspondence requesting a subpoena *duces tecum* for the victim's school records and police officer investigatory notes. (*Id.* at 77*)*. On September 25, 2015, the Superior Court denied the requests. (*Id.* at 75-79*)*.

On February 16, 2016, the San Diego Superior Court received from Petitioner a Motion for Appointment of Counsel for purposes of discovery. (ECF Nos. 14-3, 14-4 at 2). On February 19, 2016, the Superior Court received a motion requesting a free copy of transcripts, arrest warrant and supporting affidavits, and a subpoena *duces tecum*. (ECF Nos. 14-1, 14-4 at 2). The Superior Court denied both motions on April 6, 2016. (ECF No. 14-4).

On May 31, 2016, Petitioner filed a Petition for Writ of Habeas Corpus with the California Court of Appeal (Fourth District, Division One) challenging the trial court's denial of his request for a free copy of the

transcripts. (ECF No. 10-25; Case No.: D070396). The habeas petition did not challenge the superior court's denial of his request for a subpoena *duces tecum*. The Court of Appeal denied habeas relief on June 7, 2016. (ECF No. 10-26).

On June 12, 2016, Petitioner filed a Petition for Writ of Habeas Corpus with the California Court of Appeal (Fourth District, Division One) claiming "his counsel was ineffective for failing to advise [Petitioner] to produce evidence of his inability to pay the [restitution] fine." (ECF No. 10-27, 10-28 at 1; Case No.: D070489). The Court of Appeal denied habeas relief on June 20, 2016. (ECF No. 10-28).

On June 14, 2016, Petitioner filed a Petition for Review with the California Supreme Court challenging the trial court's denial of his request for a free copy of transcripts. (ECF No. 10-29). The petition for review did not challenge the superior court's denial of his request for a subpoena *duces tecum*. As part of the relief requested, however, Petitioner asked the court to grant a subpoena *duces tecum* for the victim's school record from September 2007 to April 5, 2008. (ECF No. 10-29 at 7). The California Supreme Court denied the petition without comment on August 10, 2016. (ECF No. 10-34).

**B. Federal Proceedings**

**1. Case No.: 16cv2337**

On September 13, 2016, Petitioner, proceeding *pro se*, filed the instant Petition for Writ of Habeas Corpus. (ECF No. 1; Case No.: 16cv2337). On September 21, 2016, the Petition was dismissed without prejudice because Petitioner failed to satisfy the filing fee requirement. (ECF No. 3).

On May 31, 2017, Petitioner filed a document entitled "Motion to Put Aside Order Dismissing Case," in which Petitioner explained he never received a copy of the Court's September 21, 2016, Order and only learned of

the dismissal after inquiring about the status of the case on May 20, 2017. (ECF No. 5). Because Petitioner asked the Court to permit him to submit his application to proceed *in forma pauperis*, the Court liberally construed the filing as a Motion for Extension of Time and Motion to Proceed *In Forma Pauperis*. (ECF No. 6). On June 20, 2017, the Court granted both motions and ordered the case reopened. (ECF Nos. 6, 7). On August 23, 2017, Respondent filed an Answer (ECF No. 9); Memorandum of Points and Authorities in Support of the Answer (ECF No. 9); and State Court Record Lodgments # 1 – 24. (ECF No. 10).

On September 6, 2017, Petitioner filed a Motion for Extension of Time to File Response. (ECF No. 12). On September 11, 2017, Petitioner filed a Traverse. (ECF No. 11). On September 13, 2017, this Court denied the Motion for Extension of Time as moot. (ECF No. 13).

**2. Case No.: 17cv354**

On February 15, 2017, unaware of the order dismissing this case, Petitioner filed another federal Petition for Writ of Habeas Corpus. (*See* Case No.: 17cv354 at ECF No. 1). After Respondent filed a response to the second petition, Petitioner filed a motion on May 16, 2017, requesting: (1) a copy of the second habeas corpus petition; and (2) all trial transcripts cited by Respondent. (*See Id.* at ECF No. 12). The motion was granted and Petitioner was sent a copy of the habeas petition and State Court Record Lodgments. (*See Id.* at ECF No. 13).

On September 7, 2017, Petitioner filed another motion requesting, *inter alia*, (1) a copy of Exhibit D from the May 16 motion; and (2) a copy of the state habeas petition he filed for Case No. EHC-976 in April 2014. (*See Id.* at ECF No. 25). The motion was granted and Petitioner was sent a copy of Exhibit D and a copy of his state habeas petition. (*See Id.* at ECF No. 26).

///

### III.  <u>STANDARD OF REVIEW</u>

"The Supreme Court has recognized that '[f]ederal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871[,] 42 U.S.C. § 1983.'" *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (citing *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam)).

Title 28 U.S.C. § 2254(a) provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*

(emphasis added).

Accordingly, "challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; request for relief turning on circumstances of confinement may be presented in a § 1983 action." *Nettles*, 830 F.3d at 927 (internal quotations omitted) (citing *Muhammad*, 540 U.S. at 750).  In other words, "if a state prisoner's claim does not lie at 'the core of habeas corpus,' it may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983[.]" *Nettles*, 830 F.3d at 934 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) and *Skinner v. Switzer*, 562 U.S. 521, 535 n. 13 (2011)).

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("ADEPA"), which states:

Case No.:  16-cv-02337-WQH-MDD

///

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merit in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In other words, "if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in §§ 2544(d)(1) and (2) applies." *Richter*, 562 U.S. at 103. "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) ("This standard, we recently reminded the Sixth Circuit, is difficult to meet.") (internal quotations omitted). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

The state court's decision is "contrary to" clearly established federal law if it either "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (O'Connor, J., concurring)).

The state court's decision is "an unreasonable application" of clearly established federal law "if 'the state court identifies the correct governing legal principle' but applies the principle unreasonably to the prisoner's

factual situation." *Holley*, 568 F.3d at 1098 (quoting *Williams*, 529 U.S. at 413).

"The 'unreasonable application' clause requires the state decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Relief under § 2254(d)(1)'s "unreasonable-application clause" is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 134 S.Ct. at 1706-07 (quoting *Richter*, 562 U.S. at 103).

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Woodall*, 134 S.Ct. at 1702 (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*, 538 U.S. at 71-72. "Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed." *Holley*, 568 F.3d at 1097. As such, "[i]f there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law." *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004).

Federal courts review the last reasoned decision from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991); *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily

deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

## IV. <u>DISCUSSION</u>

### A. <u>Claims One, Two, and Three</u>

In claim one, Petitioner contends he was denied his constitutional right of access to the courts when the state court denied Petitioner's request for a second set of transcripts for free.  (ECF No. 1 at 18).  In claim two, Petitioner contends he was denied due process and the right of access to the courts when the state court denied his request for a copy of the voir dire transcripts.  (*Id.* at 21).  In claim three, Petitioner contends the state court abused its discretion by not granting him a free copy of the arrest warrant and supporting affidavits, which are necessary to prosecute a state habeas petition.  (*Id.* at 22).

### 1. State Court Opinion

Petitioner raised claims one, two, and three in his habeas petition to the state appellate court, which denied the claims on the merits.  (ECF Nos. 10-25, 10-26).  Petitioner raised all three claims in a petition for review to the state supreme court, which denied the petition without comment.  (ECF Nos. 10-29, 10-34).  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for authority.  *Ylst.* 501 U.S. at 805-06.  That court wrote:

> Petitioner Raul Arellano, Jr., is currently incarcerated at R.J. Donovan Correctional Facility following a 2011 conviction.  He contends that the reports' transcript from his appeal was lost by prison officials.  He requested a replacement transcript from the superior court, which denied his request.  He asks this court to provide him copies of the transcripts.

Petitioner is not entitled to the relief he seeks. To the extent he is challenging the prison officials' actions, he has not exhausted his administrative remedies. "As a general rule, a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies." (*In re Dexter* (1979) 25 Cal.3d 921, 925.) "The requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoners.' " (*Ibid.*) Generally for prisoners, "all appeals are subject to a third level of review . . . before administrative remedies are deemed exhausted." (Cal. Code Regs., tit. 15, § 3084.1, subd. (b).) Arellano's initial request for service does not constitute exhaustion of administrative remedies, which he must complete before seeking relief in the courts. (See *id.* at § 3086, subd. (i).)

In regards to the trial court's denial of his request for new copies, Arellano is likewise not entitled to relief. Although an indigent defendant has an absolute right to transcripts on direct appeal, the defendant has no such right at the collateral relief stage. (*People v. Bizieff* (1991) 226 Cal.App.3d 1689, 1701-1702.) To obtain a free copy of the transcripts, Arellano must show a particularized need for the transcript. (*People v. Markley* (2006) 138 Cal.App.4th 230, 240.) Arellano makes no showing here and the trial court did not abuse its discretion in denying request.

The petition is denied.

(ECF No. 10-26 at 1-2).

## 2. Legal Standard

A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Therefore, "habeas corpus is the exclusive remedy for a state prisoner *who challenges the fact or duration of his confinement* and seeks immediate or speedier release[.]" *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (emphasis added). The Ninth Circuit has specifically held "a petition alleging errors in

the state post-conviction review process is not addressable through habeas corpus proceedings." *Hubbart v. Knapp*, 379 F.3d 773, 779 (9th Cir. 2004) (internal quotations omitted). Alleged errors in post-conviction relief proceedings cannot be elevated to federal constitutional status merely by using the label "due process violation." *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997).

If the claim is a cognizable federal habeas corpus claim, then Petitioner carries the burden of proving the state court adjudication of the claim either: (1) is contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) is an unreasonable determination of the facts. *Pinholster*, 563 U.S. at 181; 28 U.S.C. § 2254(d).

An indigent criminal defendant has an absolute right to trial transcripts on direct appeal. *Griffin v. Illinois*, 351 U.S. 12 (1956). There is not, however, an absolute constitutional right to a free copy of the record on collateral review. *United States v. MacCollom*, 426 U.S. 317 (1976) (interpreting 28 U.S.C. § 753(f) and applying to § 2255 habeas petition).

### 3. Analysis

#### a. Claim One: Trial Transcripts

Petitioner contends his right of access to the courts was violated when the state court abused its discretion by denying his request for a second free copy of the trial transcripts, which Petitioner claims is necessary to prosecute a state habeas petition. (ECF No. 1 at 18). Petitioner argues he is an indigent defendant and therefore has a right to a second free copy of the trial transcripts because: (1) the prison's officials lost the first copy; and, (2) he meets the requirements to receive a free copy in collateral proceedings under *U.S. v. MacCollom,* 426 U.S. 317 (1976). (ECF No. 1 at 18, 11 at 5).

Petitioner asks for this Court to grant him a free copy of the transcripts. (ECF No. 1 at 21).

Respondent argues this claim should be denied because it is not cognizable under 28 U.S.C. § 2254. (ECF No. 9-1 at 17). Respondent also argues the state court's decision cannot be contrary to, or an unreasonable application of, *MacCollom* because: (1) Petitioner has already received his one free set of transcripts during the direct appeal; and (2) in collateral proceedings, there is no constitutional right to transcripts. (*Id.* at 16-18).

Here, Petitioner does not challenge the fact or duration of his confinement, or seek an immediate or speedier release. Even if this court granted relief, it would not result in an immediate or speedier release. This is solely a claim alleging errors in a state post-conviction review process. Consequently, because he does not challenge the validity of his confinement or the particulars affecting its duration, Petitioner does not state a claim for relief that is cognizable on federal habeas review.

Even if the claim is cognizable, it still has two fatal defects. First, Petitioner argues that he satisfies *MacCollom*'s requirements to receive a second free copy of transcripts under 28 U.S.C. § 753(f). Petitioner misinterprets *MacCollom*. Framed correctly, *MacCollom* states: "[28 U.S.C. § 753(f) provides for a free transcript for indigent prisoners asserting a claim under § 225[4] if [the trial judge or a circuit judge] certifies that the asserted claim is 'not frivolous' *and* that the transcript is 'needed to decide the issue.'" *MacCollom*, 426 U.S. at 320-21 (quoting 28 U.S.C. § 753(f)) (emphasis added). Petitioner fails to demonstrate how the state court's denial of his request for a second copy of free transcripts is: (1) contrary to *MacCollom*; (2) an unreasonable application of *MacCollom*; or (3) an unreasonable determination of the facts.

///

Second, Petitioner admits he was already provided with the requested transcripts and was still requesting a copy of the habeas petition submitted in April 2014 (Case No.: EHC-976). (ECF No. 11 at 7). However, Petitioner was provided a free copy of that habeas petition per court order. (*See* Case No.: 17cv354 at ECF No. 26).

Accordingly, the Court **RECOMMENDS** claim one be **DENIED**.

### b. Claim Two: Voir Dire Transcripts

Petitioner contends the state court abused its discretion by denying Petitioner a free copy of the voir dire transcripts, violating his right of due process and access to the court. (ECF No. 1 at 21). In support of his claim, Petitioner cites: *U.S. v. Odeneal*, 17 F.3d 406, 420-21 (6th Cir. 2008); *U.S. v. McMath*, 559 F.3d 657, 664 (7th Cir. 2009); *Williams v. Runnels*, 432 F.3d 1102, 1107 (9th Cir. 2006); *Parker v. Allen*, 565 F. 3d 1258, 1269 (11th Cir. 2009); and, *U.S. v. MacCollom*, 426 U.S. 317 (1976).

Respondent argues this claim should be denied because it is not cognizable under 28 U.S.C. § 2254. (ECF No. 9-1 at 17). Respondent also argues the state court's decision cannot be contrary to, or an unreasonable application of, *MacCollom* because there is no constitutional right to free transcripts in collateral proceedings. (*Id.* at 19). Further, Respondent argues Petitioner fails to show there was ever a transcript of the voir dire. (*Id.* at 18).

Because Petitioner challenges the state court decision denying his request for voir dire transcripts, Petitioner does not challenge either the fact or duration of his confinement, or seek an immediate or speedier release. Accordingly, claim two is also a claim alleging errors in the state post-conviction review process. Consequently, because Petitioner does not

challenge the validity of his confinement or the particulars affecting its duration, he does not state a claim for relief that is cognizable on federal habeas review.

Even if this Court assumed claim two is cognizable, Petitioner again fails to satisfy either § 2254(d)(1) or (2). Although Petitioner provides several cases in support of his argument, only *MacCollom* is relevant as the other cases provided are federal appellate cases and, therefore, do not satisfy the "clearly established federal law" requirement of § 2254(d)(1). Petitioner also fails to indicate how the state court's denial of his request for a free transcripts is: (1) contrary to *MacCollom*; (2) an unreasonable application of *MacCollom*; or (3) an unreasonable determination of the facts.

Accordingly, the Court **RECOMMENDS** claim two be **DENIED**.

### c. Claim Three: Arrest Warrant and Affidavits

Petitioner contends the state court abused its discretion by not granting a free copy of the arrest warrant and supporting affidavits, in violation of the Fourth Amendment. (ECF No. 1 at 22). Petitioner explains that he needs a copy of these documents to properly prosecute a state habeas petition. (*Id.* at 13).

Respondent argues this claim is not cognizable under 28 U.S.C. § 2254. (ECF No. 9-1 at 17). Respondent also argues this claim for an abuse of discretion by the state courts is not a federal constitutional claim. (*Id.* at 19).

Petitioner challenges the state court order denying his request for a free copy of the arrest warrant and supporting affidavits. Claim three does not challenge the state trial court's denial of habeas relief for ineffective assistance of counsel. This is evidenced by Petitioner's request for relief: "[I a]m here asking [the] Court to grant me a copy of this document so I can properly present my [IAC claim to] lower courts. Otherwise[,] courts will not

hear my [IAC claim] due to me not having [these] documents from where I base my claim[.]" (ECF No. 1 at 22).

As with claims one and two, Petitioner does not challenge the fact or duration of his confinement, or seek an immediate or speedier release. Consequently, because Petitioner does not challenge the validity of his confinement or the particulars affecting its duration, Petitioner does not state a claim for relief that is cognizable on federal habeas review.

Even if this Court assumed claim three is cognizable, Petitioner again fails to satisfy either § 2254(d)(1) or (2). Petitioner, to support his argument, cites *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 1 at 22). *Franks*, however, is not applicable because it is not relevant to a court's discretion to provide free copies of an arrest warrant and supporting affidavits. Rather, the only issue presented in *Franks* addresses a Defendant's right to "challenge the veracity of a sworn statement used by police to procure a search warrant." *Franks*, 438 U.S. at 155-61 ("[Petitioner's] petition for certiorari presented only the issue whether the trial court had erred in refusing to consider his allegation of misrepresentation in the warrant affidavit."). Although *Franks* may be relevant to Petitioner's ineffective assistance of counsel claim made in his original state habeas petition, the case is not relevant to show abuse of discretion in denying a free copy of an arrest warrant and supporting affidavits.

Consequently, Petitioner fails to demonstrate how the state court's denial of his request for a free transcripts is either: (1) contrary to, or an unreasonable application of, clearly established Federal law; or (2) an unreasonable determination of the facts.

Accordingly, the Court **RECOMMENDS** claim three be **DENIED**.

///

///

## B. <u>Claim Four: Subpoena *Duces Tecum*</u>

Petitioner contends in claim four the state court abused its discretion by not granting his request to issue a subpoena *duces tecum*. (ECF No. 1 at 23).

### 1. State Court Opinion

Petitioner filed a habeas petition with the state trial court listing ninety-eight grounds for relief, including fifty-four IAC claims denied for failure to submit full or partial transcripts of the preliminary hearing and trial proceedings. (ECF Nos. 10-13, 10-14, 10-15, 10-16, 10-17, 10-18, 10-19 at 3). Relevant to claim four in the current Petition is Ground 57 which alleges, *inter alia*, trial counsel's failure to investigate the victim's school records. (ECF No. 10-16 at 97). Specifically, Petitioner alleges he had the victim's school record from Sept. – Dec. 2007 in his possession before the start of his trial,[2] which was subsequently lost by prison staff. (*Id.* at 101). Petitioner requested the court provide him an investigator to prove the victim was at school because this evidence would have contradicted the "[prosecutor's] insinuat[ion] on closing argument[] . . . And what [the appellate] court used to connect me with [the victim]." (*Id.*).

On July 15, 2015, the state trial court received a letter from Petitioner requesting a subpoena *duces tecum* for the victim's school records and also requested police investigatory notes. (ECF No. 1 at 75-79). The state trial

---

[2] Although Petitioner asserts in the state habeas petition he had acquired the school attendance record "[p]rior to trial," (ECF No. 10-16 at 101), Petitioner now submits to this court he acquired a copy of the school attendance record while preparing the state habeas petition. (ECF No. 1 at 23) ("On habeas corpus while preparing it I manage[d] to get a copy of her attendance record of school from Sept – Dec 2007.").

court denied the request and provided a reasoned decision on the issue. (ECF No. 1 at 77-78).

On February 19, 2016, the state trial court received a motion from Petitioner again requesting, *inter alia*, a subpoena *duces tecum*, but only for the victim's school attendance records for September through December 2007. (ECF Nos. 14-1 at 4-5, 14-4). On April 6, 2016, the state trial court denied the request for both the victim's school records and police investigatory notes. (ECF No. 14-4 at 3). In doing so, the trial court explicitly stated the denial rested on the same reasons as the court's September 28, 2015, order denying request for free transcripts and for blank subpoenas. (*Id.*).

On May 31, 2016, Petitioner filed a habeas petition with the state appellate court raising only the above discussed transcript claims. (ECF No. 10-25). The petition did not challenge the state trial court's denial of his request for a subpoena *duces tecum*. The state appellate court denied habeas relief on June 7, 2016. (ECF No. 10-26).

On June 14, 2016, Petitioner constructively filed a petition for review in the state supreme court raising only the transcript claims. (ECF No. 10-29). The petition for review did not challenge the superior court's denial of his request for a subpoena *duces tecum*. As part of the relief requested, however, Petitioner asked the court to grant a subpoena *duces tecum* for the victim's school record from September 2007 to April 5, 2008. (*Id.* at 7). The state supreme court denied the petition without comment. (ECF No. 10-34).

## 2. Summary of Arguments

Petitioner contends the state courts abused their discretion by denying his request for a subpoena *duces tecum* for the victim's school attendance records and police investigatory notes, in violation of the Fifth and Fourteenth Amendments. (ECF No. 1 at 23). Specifically, Petitioner

requests: "I would like [this] Court to grant me my request about state court to issue a subpoena to [victim's] school so I can get her attendance record from Sept. 2007 – Dec. 2008, so I can prove my I.A.C. claim[.]" (*Id.*).

Respondent argues the claim is not cognizable under 28 U.S.C. § 2254. (ECF No. 9-1 at 17). Respondent also argues there is no federal constitutional violation presented in the denial by a state court to grant Petitioner a subpoena *duces tecum* in collateral proceedings. (*Id.* at 20).

### 3. Legal Standard

Petitioners who wish to challenge a state court conviction or length of confinement in state prison must first exhaust state judicial remedies. 28 U.S.C. § 2254(b)-(c). "[T]he petitioner must 'seek full relief first from the state courts, thus giving those courts the opportunity to review all claims of constitutional error.'" *Dixon v. Baker*, 847 F.3d 714, 718 (9th Cir. 2017) (citing *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)). To exhaust a claim, a petitioner may either: (1) "'fairly present[]' his federal claim to the highest state court with jurisdiction to consider it . . . or . . . demonstrate[] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citing *Picard v. Connor,* 404 U.S. 270, 275 (1971), and *Harmon v. Ryan*, 959 F.2d 1457, 1460 (9th Cir. 1992)). When no state court remedies are available, the exhaustion requirement is satisfied. *Id.*

Additionally, federal courts have discretion to deny a habeas application on the merits notwithstanding a petitioner's failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). Even if the claim has never been presented to any state court, the district court can deny habeas relief if it does not present a cognizable claim. 28 U.S.C. § 2254(b)(2); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 142 (9th Cir. 1992).

As stated previously, "habeas corpus is the exclusive remedy for a state

prisoner *who challenges the fact or duration of his confinement* and seeks immediate or speedier release[.]" *Heck*, 512 U.S. at 481 (emphasis added). A "petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Hubbart*, 379 F.3d at 779 (internal quotations omitted).

Accordingly, even if the claim has not been presented to any state court, habeas relief may be denied if the claim alleges errors in the state post-conviction review process because such claims are not cognizable through habeas proceedings.

### 4. Analysis

Petitioner argues his Fifth and Fourteenth Amendment rights were violated when the state court abused its discretion by denying his request for a subpoena *duces tecum*. (ECF No. 1 at 23). Petitioner raises this argument for the first time here and has not presented this claim to any state court. Petitioner is not challenging the state court's denial of his state habeas claim of ineffective assistance of counsel for failure to investigate the victim's school records. Rather, Petitioner is arguing the state court abused its discretion when denying his July 15, 2015, and February 19, 2016, letters requesting the subpoena.

Although the Petition does not explicitly state which state court denial Petitioner challenges and does not cite the court order, it does provide: "[o]n one of my [i]nitial motions I stated that I needed for Court to issue a Subpoena Duces Tecum to [victim's school.]" (ECF No. 1 at 23). However, the lack of specificity as to which order is being challenged is of no consequence as the order denying the second letter rested on the same reasoning as the order denying the first letter. *See Ylst*, 501 U.S. at 805-06 (federal courts review the last reasoned decision from state courts).

///

Claim four does not challenge the fact or duration of Petitioner's confinement, nor seek an immediate or speedier release. As with the first three claims, claim four also alleges errors in the state post-conviction review process and does not challenge the validity of his confinement or the particulars affecting its duration. Therefore, Petitioner does not state a claim for relief that is cognizable on federal habeas review.

Accordingly, the Court **RECOMMENDS** claim four be **DENIED**.

## C. Appointment of Counsel

In the Petition, Petitioner requests the appointment of counsel to recover all of the evidence previously lost by prison staff. (ECF No. 1 at 24). Respondent, however, did not address this request. (ECF No. 9-1).

### 1. Legal Standard

The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners. *See McClesky v. Zant*, 499 U.S. 467, 495 (1991); *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996) (noting that there currently exists no constitutional right to appointment of counsel in habeas proceedings). However, courts may appoint counsel for financially eligible habeas petitioners *seeking relief pursuant to* 28 U.S.C. § 2254 where "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). Whether to appoint counsel is a matter left to the court's discretion, unless an evidentiary hearing is necessary. *See Knaubert v. Goldsmith*, 791 F.2d 722, 728-30 (9th Cir. 1986) (explaining that the interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition).

A court's discretion to appoint counsel may be exercised only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.

1991).  "A finding of exceptional circumstances requires an elevation of both the 'likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'  Neither of these issues is dispositive and both must be viewed together before reaching a decision."  *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

## 2. Analysis

As discussed above, Petitioner's four claims are not cognizable for habeas relief under 28 U.S.C. § 2254.  Petitioner cannot succeed on the merits of uncognizable claims.  An analysis of the Petitioner's ability to articulate claims *pro se* is not necessary because the alleged claims are not cognizable.  Consequently, this Court need not exercise discretion to appoint counsel because there has been no finding of exceptional circumstances.

Accordingly, the Court **RECOMMENDS** Petitioner's request for counsel be **DENIED**.

## V.   REQUEST FOR CONSOLIDATION

In the Answer, Respondent requests the instant petition be consolidated with the February 2017 habeas petition under case 17cv354-AJB-AGS.  (ECF No 9-1 at 16).  Because this Court recommends that the instant petition be denied in its entirety, this Court is not recommending consolidation.

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **April 11, 2018**, any party to this action may file written objections with this Court and serve a

Case No.:  16-cv-02337-WQH-MDD

copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 18, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: March 12, 2018

Hon. Mitchell D. Dembin
United States Magistrate Judge

Case No.: 16-cv-02337-WQH-MDD